**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| CHRISTIAN CASTRO, | : | |
| | : | Civil Action No. 04-0254 (FLW) |
| Petitioner, | : | |
| | : | |
| v. | : | **OPINION** |
| | : | |
| UNITED STATES BUREAU | : | |
| OF PRISONS, et al., | : | |
| | : | |
| Respondents. | : | |

**APPEARANCES:**

| | |
|---|---|
| Petitioner <u>pro se</u> | Counsel for Respondent |
| Christian Castro | Irene E. Dowdy |
| #03544-036 | Assistant U.S. Attorney |
| 214 Broadway Street, No. 27 | 402 East State Street |
| Lawrence, MA 01841 | Suite 430 |
| | Trenton, NJ 08608 |

**WOLFSON**, District Judge

Petitioner Christian Castro, a prisoner previously confined at the Federal Correctional Institution at Fort Dix, New Jersey, has submitted a petition for writ of habeas corpus, pursuant to 28 U.S.C. § 2241,[1] challenging the results of a prison disciplinary proceeding.

---

[1] United States Code Title 28, Section 2241, provides in pertinent part:
   (a) Writs of habeas corpus may be granted by the ... district courts ... within their respective jurisdictions ...
   (c) The writ of habeas corpus shall not extend to a prisoner unless- ... (3) He is in custody in violation of the Constitution or laws or treaties of the United States ... .

For the reasons set forth below, the Petition will be denied.

## I.   BACKGROUND

On December 17, 2002, while Petitioner was designated to a Community Corrections Center ("CCC") in Boston Massachusetts, Petitioner provided a urine specimen for drug analysis testing. That specimen was assigned number 310024980.  Petitioner signed the Chain of Custody form indicating that he provided specimen number 310024980 and that specimen number 310024980 was sealed in his presence.[2]  On December 30, 2002, a CCC staff member received written notification from PharmChem Laboratories that specimen number 310024980 had tested positive for Cocaine.  (Answer, Exs. E, Chain of Custody form, and F, PharmChem Laboratories report.)

That same day, Petitioner was charged in Incident Report Number 1066247, (Answer, Ex. D, Incident Report No. 1066247), with a violation of Offense Code 112, "Use of Any Narcotics, Marijuana, Drugs, or Related Paraphernalia Not Prescribed for the Individual by the Medical Staff."  See 28 C.F.R. § 541.13.  Also on December 30, 2002, the Incident Report was delivered to Petitioner.

On December 31, 2002, Petitioner appeared before the Center Discipline Committee ("CDC") for a hearing.  Petitioner requested

---

[2] Before this Court, Petitioner states that he signed the Chain of Custody form before providing the urine specimen and that the specimen was not sealed in his presence.

2

a staff representative.  A staff representative was provided.[3] At the hearing, Petitioner denied the charge.  In response to questioning, he stated that he was taking certain over-the-counter medications.  At the conclusion of the hearing, the CDC found that Petitioner had committed the prohibited act.  The CDC stated that, in reaching this determination, it relied upon the Chain of Custody form and the PharmChem Laboratories report.  The CDC recommended sanctions including loss of good-conduct time (to be suspended pending clear disciplinary conduct for six months).  (Answer, Ex. G, CDC Report.)

    Pursuant to Bureau of Prisons Program Statements, the CDC forwarded its records to the Discipline Hearing Officer ("DHO") at the Federal Medical Center at Devens, Massachusetts, for review.  See BOP Program Statements 7300.09, Community Corrections Manual, Chapter 5.7, and 5270.07, Inmate Discipline and Special Housing Units.  As is permitted by the BOP Program Statements, the DHO amended the CDC sanctions recommendations.  The DHO sanctioned Petitioner to 40 days disallowance of good-conduct time and transfer from the CCC to a secure facility.  (Answer, Ex. G, CDC Report, § X.)  A copy of the CDC Report including the action of the DHO thereafter was provided to Petitioner.

---

    [3] Petitioner states that the staff representative provided translation services, only, but does not indicate that he requested services that were not provided.

Respondents concede that Petitioner has exhausted his administrative remedies.

Here, Petitioner contends that he was deprived of due process in the disciplinary proceedings. Specifically, he contends that, before the CDC hearing, he should have received a copy of the PharmChem laboratory report. He also contends that he should have been given an opportunity to provide a second urine specimen, or, in the alternative, that the urine specimen should have been subjected to DNA testing or, finally, that he should have been given a portion of the tested urine specimen for re-testing. With respect to the DHO review, Petitioner contends that he should have been permitted to be present and make a statement. He asks this Court to expunge the sanctions against him.

## II.  LEGAL STANDARD

"Habeas corpus petitions must meet heightened pleading requirements." McFarland v. Scott, 512 U.S. 849, 856 (1994). A petition must "specify all the grounds for relief" and must set forth "facts supporting each of the grounds thus specified." See Rule 2(c) of the Rules Governing § 2254 Cases in the U.S. District Courts (amended Dec. 1, 2004) ("Habeas Rules"), made applicable to § 2241 petitions through Rule 1(b) of the Habeas Rules.

Nevertheless, a pro se pleading is held to less stringent standards than more formal pleadings drafted by lawyers. Estelle v. Gamble, 429 U.S. 97, 106 (1976); Haines v. Kerner, 404 U.S. 519, 520 (1972). A pro se habeas petition and any supporting submissions must be construed liberally and with a measure of tolerance. See Royce v. Hahn, 151 F.3d 116, 118 (3d Cir. 1998); Lewis v. Attorney General, 878 F.2d 714, 721-22 (3d Cir. 1989); United States v. Brierley, 414 F.2d 552, 555 (3d Cir. 1969), cert. denied, 399 U.S. 912 (1970).

### III. ANALYSIS

#### A. Jurisdiction

A habeas corpus petition is the proper mechanism for a prisoner to challenge the "fact or duration" of his confinement, Preiser v. Rodriguez, 411 U.S. 475, 498-99 (1973), including challenges to prison disciplinary proceedings that affect the length of confinement, such as deprivation of good time credits, Muhammad v. Close, 540 U.S. 749 (2004) and Edwards v. Balisok, 520 U.S. 641 (1997). See also Wilkinson v. Dotson, 125 S.Ct. 1242 (2005). Habeas corpus is an appropriate mechanism, also, for a federal prisoner to challenge the execution of his sentence. See Coady v. Vaughn, 251 F.3d 480, 485-86 (3d Cir. 2001); Barden v. Keohane, 921 F.2d 476, 478-79 (3d Cir. 1990). In addition, where a prisoner seeks a "quantum change" in the level of custody, for example, where a prisoner claims to be

entitled to probation or bond or parole, habeas is the appropriate form of action.  See, e.g., Graham v. Broglin, 922 F.2d 379 (7th Cir. 1991) and cases cited therein.

To the extent a prisoner challenges sanctions affecting his conditions of confinement, however, such claims must be raised by way of a civil rights action.  See Leamer v. Fauver, 288 F.3d 532 (3d Cir. 2002).  Where a favorable outcome necessarily would imply the invalidity of the length of a prisoner's sentence, such claims do not accrue until the sanction has been invalidated through reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus.  See Heck v. Humphrey, 512 U.S. 477 (1994).  Thus, this Court can award no relief related to those sanctions that do not affect the length of Petitioner's sentence.

B.   Petitioner's Claims

Convicted and sentenced prisoners retain the protections of the Due Process Clause of the Fifth and Fourteenth Amendments that the government may not deprive them of life, liberty, or property without due process of law.  See Wolff v. McDonnell, 418 U.S. 539, 556 (1974); Haines v. Kerner, 404 U.S. 519 (1972); Wilwording v. Swenson, 404 U.S. 249 (1971).  Such protections are, however, "subject to restrictions imposed by the nature of

the regime to which [prisoners] have been lawfully committed. ... In sum, there must be mutual accommodation between institutional needs and objectives and the provisions of the Constitution that are of general application." Wolff, 418 U.S. at 556.

A liberty interest protected by the Due Process Clause may arise from either of two sources: the Due Process Clause itself or from state or federal law. See Hewitt v. Helms, 459 U.S. 460, 466 (1983); Asquith v. Department of Corrections, 186 F.3d 407, 409 (3d Cir. 1999).

Where the government has created a right to good time credits, and has recognized that a prisoner's misconduct authorizes deprivation of the right to good time credits as a sanction,[4] "the prisoner's interest has real substance and is sufficiently embraced within Fourteenth Amendment 'liberty' to entitle him to those minimum procedures appropriate under the circumstances and required by the Due Process Clause to insure that the state-created right is not arbitrarily abrogated." Wolff, 418 U.S. at 557.

---

[4] The Constitution itself does not guarantee good time credits for satisfactory behavior in prison. Congress, however, has provided that federal prisoners serving a term of imprisonment for more than one year, other than a term of imprisonment for the duration of the prisoner's life, may receive credit toward the service of their sentence based upon their conduct. See 18 U.S.C. § 3624(b); 28 C.F.R. § 523.20.

7

Thus, a prisoner is entitled to an impartial disciplinary tribunal, Wolff, 418 U.S. at 570-71, excluding "only those [prison] officials who have a direct personal or otherwise substantial involvement ... in the circumstances underlying the charge from sitting on the disciplinary body," Meyers v. Alldredge, 492 F.2d 296, 306 (3d Cir. 1974).

To comply with the requirements of the Due Process Clause, prison officials also must provide a prisoner facing loss of good time credits with: (1) a written notice of the charges at least 24 hours prior to any hearing, (2) an opportunity to call witnesses and present documentary evidence in his defense when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals,[5] and (3) a written statement by the factfinders as to the evidence relied on and the reasons for the disciplinary action.  Wolff, 418 U.S. at 564-66. Prisoners do not have a due process right of confrontation and cross-examination, or a right to counsel, in prison disciplinary

---

[5] Prison officials must justify their refusal to call witnesses requested by the prisoner, but such justification need not be presented at the time of the hearing.  To the contrary, the explanation for refusal to call witnesses requested by the prisoner may be provided through court testimony if the deprivation of a liberty interest is challenged because of that claimed defect in the hearing. See Ponte v. Real, 471 U.S. 491 (1985).  "{P]rison officials may deny a prisoner's request to call a witness in order to further prison security and correctional goals.  ...  [T]he burden of persuasion as to the existence and sufficiency of such institutional concerns is borne by the prison officials, not by the prisoners." Grandison v. Cuyler, 774 F.2d 598, 604 (3d Cir. 1985).

proceedings. Id. at 569-70. Where an illiterate inmate is involved, or the complexity of the issue makes it unlikely that the inmate involved will be able to collect and present the evidence necessary for an adequate comprehension of the case, the prisoner should be permitted to seek the aid of a fellow inmate or appropriate staff member. Id. at 570.

Finally, due process requires that findings of a prison disciplinary official, that result in the loss of good time credits, must be supported by "some evidence" in the record. Superintendent, Massachusetts Correctional Institution at Wolpole v. Hill, 472 U.S. 445, 454-56 (1985).[6]

Here, Petitioner was afforded all the procedures required by the Due Process Clause of the Fifth Amendment. Petitioner was given advance notice of the charge against him. A copy of the PharmChem report would not have provided any further information. Petitioner was given the opportunity to appear and make a statement in his defense at the CDC hearing. Due Process does not require that he be given a second opportunity to appear and make a statement at the regional automatic review level. In addition, the PharmChem laboratory report and the associated

---

[6] The due process requirements of Wolff, as they relate to federal prisoners, have been codified in the Code of Federal Regulations at 28 C.F.R. § 541.10 et seq. See, e.g., 28 C.F.R. § 541.14 (Incident report and investigation); 28 C.F.R. § 541.16 (Establishment and functioning of the Discipline Hearing Officer); 28 C.F.R. § 541.17 (Procedures before the Discipline Hearing Officer).

Chain of Custody form are sufficient evidence to support the findings of the CDC and DHO.  Petitioner's present contention that he signed the Chain of Custody form before providing the specimen does not diminish its adequacy as evidence on which the CDC and DHO could rest their findings.  Nor does due process require that Petitioner be afforded the opportunity to provide a second urine specimen, or to re-test the positive urine specimen.

## IV.  CONCLUSION

For the reasons set forth above, the Petition will be denied.  An appropriate order follows.


       S/Freda L. Wolfson
       Freda L. Wolfson
       United States District Judge

Dated: September 8, 2005